### Case No. 4,971.

#### FOSTER v. HACKLEY et al.

[2 N. B. R. 406 (Quarto, 131);[1] 2 Am. Law T. Rep. Bankr. 8; 1 Chi. Leg. News, 137.]

Circuit Court, W. D. Michigan. Jan. 1869.

[1] [Reprinted from 2 N. B. R. 406 (Quarto, 131), by permission.]

John W. Champlin, George Gray, and John T. Holmes, for plaintiff.

E. S. Eggleston, Emory A. Storrs, and D. Darwin Hughes, for defendants.

WITHEY, District Judge (charging jury). Gentlemen of the Jury: Since the commencement of this trial, on the morning of the 15th of December, ten days have been consumed by the introduction of evidence—one entire day in arguments to the court upon the construction of section thirty-five of the bankrupt act, on the question of the admissibility of testimony, and three days have been occupied by counsel in summing up the case. This is the twenty-third day since the commencement of the trial; of this time you have sat fourteen days to hear the evidence and arguments of counsel. You have evinced throughout the trial the utmost attention, and although there has been a large amount of testimony introduced, I can but hope you are so well possessed of the case, as to enable you to arrive at a satisfactory result to yourselves as well as to the parties concerned in your verdict. The cause is one of no common importance or magnitude—considering the amount and legal questions involved in the issue. It is your duty as well as mine to give to the case an unbiased and unprejudiced judgment. We are to know no party in the cause, to have no prejudices, but arrive at conclusions, solely from the law and testimony of the case, aided as we may be in so doing by the very able and exhaustive argument of the learned counsel. It is the duty of the court to instruct you in the law of the case, and it is your duty to take the law as the court shall declare it to be. In no other way can the rights of parties be protected. Should either party be dissatisfied with any ruling the court makes, his remedy lies in a court possessing power to review the decisions of this tribunal. But there is no way of reviewing your conclusions of law otherwise than by setting aside the verdict, as being contrary to the instructions of the court, and awarding a new trial. Such a calamity, I trust,

will not fall upon the parties, the counsel, or the court, in this case. It belongs to you, gentlemen, to determine what the evidence proves and establishes. You are sole judges of the facts; but you ·are to consider only such testimony as has been admitted into the case. You are to know nothing of any facts bearing on the issue, except those which have been introduced in evidence. The entire testimony is to be weighed and considered by you, under and in accordance with the rule of law and the instruction which the court shall give to you.

To the evidence and the law of the case, thus placed before you, you shall apply such tests in reaching conclusions as your experience and intelligence shall enable you. The court will endeavor to avoid an argument of the facts. No further consideration of them is designed than shall be sufficient to illustrate and instruct as to the law which is to govern your deliberations. The plaintiff brings this action of trover, to recover damages which he alleges to have sustained by reason of certain personal property he claims to have owned at or before the commencement of this suit, having been by defendants appropriated to their use. The damages which the plaintiff is entitled to recover, if he is successful in this suit, is the value of the property owned by him as assignee and shown to have been converted by defendants, at the time of such conversion, with interest. The defendants, by their plea of the general issue, deny property in the plaintiff, and deny the conversion. The questions, therefore, which ultimately will be reached and constitute the result of all your enquiries, are, whether Foster, as assignee of the estate and effects of Blake, a bankrupt, was owner of any property described in the declaration, and what property; next, whether defendants appropriated or converted any and what of this property; and finally, the value.

In reaching these questions, several other questions of the first importance are to be settled in part by the court, and in part by the jury. At the outset, then, we find that Blake was possessed of a large amount of property, both real and personal. It has been valued at about one hundred and thirty thousand dollars; the defendants value it at much less. At the same time he was owing in the neighborhood of one hundred and forty thousand dollars, considerable of it due and about to come due, and he without money to meet even a small portion of such indebtedness. Blake realized his embarrassed condition, and impressed by the effects a falling market for lumber must have on his ability, he sought Charles H. Hackley, one of the defendants, and stated his inability to go on in his business, and that he should be obliged to make an assignment. He was advised by Hackley not to do this, but to make an absolute sale of his property. Blake acceded to this, and conveyed, by bills of sale and deeds. what Blake says was intended to cover all his personal and real estate—except lands mortgaged to Foster to secure him against endorsements for Blake. This was May 25th, 1868. At the time of this transfer defendants were creditors of Blake to a large amount, claimed by defendants to have been some seventy thousand dollars, and the sale by Blake to them was designed to prefer and pay defendants. A valuation was fixed on the property, ·which nearly or quite absorbed it in paying Blake's debt to defendants. The value fixed between the parties on Blake's interest in the logs and lumber was sufficient to reduce Blake's debt to defendants to some sixteen thousand dollars; and the stock of goods and other personal property, with the land, was designed to cover this balance, and enable defendants to pay two or more thousand dollars, part of which Blake wanted paid to certain home creditors; the residue of about one thousand dollars Blake was to receive, of which seven hundred and fifty, defendants paid to him. June 2d a petition was filed to have Blake declared a bankrupt.

Without intending to be at all minute in the statement of the transactions involved in the sale and transfer, but only in a cursory and general way giving the principal features, as a basis for instructions upon certain of the questions of law that have been urged, we will now proceed to state those questions and give you instructions. The arguments of learned counsel have been characterized by great clearness and directness, which no one more appreciates and approbates than a judge on the bench. These arguments, as forensic discussions, have not only been marked by great learning and ability upon the whole case, but exhaustive. The questions which have been discussed and require our ruling arise under a law which has been but a brief period in existence, and have not, as far as I am advised, been decided; so that for the most part the court must look to the statute alone for its construction. This I have done with that consideration and care which the magnitude of the case and the importance of the questions have demanded. The design of the bankrupt act [14 Stat. 517] is to relieve an insolvent debtor from his debts; and, in justice to creditors who are compelled to receive less than the debtor owes them in full satisfaction, the law also designs to give them, pro rata, all the estate and property of the debtor, not exempt to him. To this end congress has intended, as I understand the statute, to prevent preferences by the debtor for four months, and transfers for six·months before the commencement of proceedings in bankruptcy, so far as reasonably may be, and not unjustly interfere with the business relations and dealings of men.

The first question is, whether there can be a recovery in this suit under any ·other than section 14 of the bankrupt act, and if not,

it is claimed that a recovery can only be had by showing that the bill of sale of May 25th was made to defraud creditors, and void by virtue of the statutes of Michigan against fraudulent conveyances. In this connection it is claimed also, that even though the transfers made May 25, and about that time, by Blake to defendants, to give a preference to them, was void by section 35, yet there exists no right of action at law in the assignee of the bankrupt, to recover the property so transferred, or its value; but that a recovery can only be had by a proceeding in a court of bankruptcy of a summary character. I have embraced in the claims now stated what covers several requests of defendants' counsel for instruction, because the view which I take enables me to best dispose of them together, in connection with my construction of section 14. The court is of opinion, and instructs the jury, that section 14 gives to the assignee in bankruptcy the right to bring this suit, as well as to recover, where the proofs establish a transfer made to defraud creditors within the state statute against fraudulent conveyances—otherwise known as the "Statute of Frauds"—as also to recover property, or its value, which by section 35 or 39 has been transferred in fraud of the bankrupt act. Section 14 provides that all the estate and effects of the bankrupt shall pass to the assignee in bankruptcy, and that the deed of transfer to the assignee shall relate back to the commencement of the proceedings in bankruptcy, and that he may sue for and recover all said estate, and such as has been conveyed in fraud of creditors. Now, although, at the commencement of the bankruptcy proceedings against Blake, the bankrupt's property was held by one who claimed it by transfer—still, if it be shown that such transfer is void by virtue of section 35 or 39 not by section 14, it follows that the bankrupt did own such property at the time when bankruptcy proceedings were commenced, and therefore the title to such property vested in the assignee under the deed of assignment, by virtue of section 14; and as this section expressly gives a right of action to the assignee to sue for and recover all the estate of the bankrupt, owned by him at the time of filing the petition in bankruptcy, it follows, logically and certainly, that the assignee is not confined to summary proceedings in a court of bankruptcy, though he may resort to that mode of enforcing his claims to recover property or its value, the sale or transfer of which is made void by sections 35 and 39, but may sue at law if he so elect. It becomes unnecessary, under this view, to determine whether, outside of section 14, the assignee could maintain an action at law by virtue of sections 35 and 39, when viewed with reference to the right to sue declared by section two; though I incline to the view, that under those sections the action could be maintained.

The plaintiff claims the right of recovery under the evidence, substantially upon two distinct grounds: First. That the transfers by Blake to defendants in May are void, under the statute of frauds, as fraudulent conveyances. Second. That those transfers are void, as a fraud on the provisions of the bankrupt act. The defendants insist that these grounds for recovery are in law but one ground, and that the proofs must, under either claim, satisfy you that the transfer, if fraudulent at all, is so by the statute against fraudulent conveyances; that the thirty-fifth and thirty-ninth sections of the bankrupt act mean and refer to such transfers as by the statute of Elizabeth are void, and to no other. In other words, that those transfers having been made by way of giving a perference by Blake to his creditors, the defendants, they are only void when it is shown that the design was to hinder, delay, or defeat other creditors, and not a mere preference in good faith of a bona fide indebtedness. The question is an important one; the views of the learned counsel are radically at variance as to the law. It becomes necessary in this connection to examine the thirty-fifth section of the bankrupt law, under which, as well as under section 39, the plaintiff claims the transfers in May last by Blake to defendants are void.

The section now under consideration, so far as affects the questions presented in this case, provides: First. "If any person, being insolvent, shall, within four months before the filing of the petition in bankruptcy, with a view to give a preference to a creditor, make any payment or transfer of any part of his property, and the person who receives such payment or transfer has reasonable cause to believe that such person is insolvent, and that such payment or transfer is made in fraud of the provisions of the bankrupt act, the same shall be void, and the assignee may recover the property or the value of it from the person receiving it." Second. "If any person being insolvent shall, within six months before the filing of the petition in bankruptcy, make any transfer of any part of his property to any person who then has reasonable cause to believe him to be insolvent, and that such payment or transfer is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or evade any of the provisions of this act, the transfer shall be void, and the assignee may recover the property or the value thereof, as assets of the bankrupt." The first provision is designed to defeat a preference to a creditor, while the second is designed to defeat any transfer of property. To defeat either the preference or transfer, it must appear that the act done was a violation of the provisions of the bankrupt law. What is it that renders a transfer void, under this section? First, the debtor making the transfer

must be insolvent; second, if the transfer gives a preference, it must have been made with a view to give preference to the creditor; third, in any event the person receiving the transfer must, at the time, have reasonable cause to believe the person making the transfer to be insolvent; and, fourth, must also have reasonable cause ·to believe that such transfer was in fraud of the provisions of the bankrupt act. You will notice that if the object was not to give a preference to a creditor, then the question whether a preference was intended is rendered wholly immaterial. That Blake was, in May, insolvent, is not denied; and that he made the transfer to the defendants, with a view to give a preference, is also admitted; thus two questions are disposed of, and but two remain for you to pass upon, so far as this section is involved, both of which must be found, from the evidence, to establish fraud on the provisions of the act.

The first, whether defendants had reasonable cause to believe Blake insolvent, is purely a question of fact. If you find that Hackley had good reason to believe that Blake was unable to pay his debts as they became due, and for that reason his business must be broken up or stopped, then defendants had reasonable cause to believe Blake insolvent.

The other question: Did Hackley have reasonable cause to believe that the transfer in May was in fraud of the provisions of the act? Neither question involves the inquiry ·whether defendants knew, but whether they had reasonable cause to believe. To aid you in forming a conclusion, you are instructed that the law conclusively presumes defendants knew the provisions of the bankrupt act at the time of the transaction in May. You are instructed, also, that it is entirely immaterial whether defendant, Charles H. Hackley, who carried on the negotiations for the transfer of property by Blake to defendants, had in contemplation the bankrupt law or not, and alike immaterial whether Blake had. Again, the court instructs you, that whether the defendants had reasonable cause to believe that the transfer was in fraud of the provisions of the bankrupt act, must be determined from the transaction, from the attendant circumstances, from the information he possessed of Blake's pecuniary affairs [see In re Blake, Case No. 1,492], from what was said and the conversation that passed between them, and from all that transpired at and about that time, in reference to the transfer and property. Further, if the defendants had reasonable cause to believe that the transfer was made with a view to prevent the property from being equally distributed among all Blake's creditors, then they did have reasonable cause to believe that the transfer was in fraud of the bankrupt law; for then it would impair, hinder, impede, and delay the operation and effect of the act, and would tend to evade the provisions thereof. Again, a conveyance by an insolvent debtor of all, or nearly all, his property and effects to a creditor, whereby his business is broken up, is a very strong proof as to the fraudulent character of the transfer. Or if, in making the transfer, there was a secret benefit to result to the insolvent debtor, it is evidence of fraud, and renders the conveyance void in favor of creditors.

Finally, on the question under consideration—if the transaction will, in fact, operate as a fraud on the provisions of the bankrupt act, all parties to it must be presumed to know the necessary consequences and result of their acts, with reference to the effect on the provisions of the bankrupt act. As requested by the plaintiff's counsel, the·court instructs the jury that any bill of sale which was not accompanied by a delivery of the property, and followed by an actual and continued change of possession, is evidence of fraud, unless it be made to appear that the sale was made in good faith, and without intent to defraud the creditors of the vendor. The court also instructs you that it is wholly immaterial whether the preference given to defendants was voluntary or by reason of threats of legal proceedings or coercion. The voluntary or involuntary character of the transactions is not important under the present bankrupt act.

I shall now dispose of the question presented in reference to the contract of January 25, 1868, known as the log contract. It certainly presents some unusual features, and it may be difficult·of construction, but the duty of the court is to tell you how you are to view it, however difficult the task may be of forming a correct judgment. Able counsel have entirely and widely differed as to its import. It is claimed to be a bill of sale with an agreement, with an appendage designed as a mortgage, but which is not a mortgage. It is claimed to be a contract embracing a mortgage clause which is valid. The plaintiff claims fourteen to eighteen million feet of logs by virtue of it, and the defendants likewise claim under it all the logs.

The court regards this contract as expressing all the evidence which you are to consider in reference to agreements between Blake and defendants about getting in logs and advances for logs, none other having been introduced in evidence, though referred to by a witness; and so far as oral agreements on the subject referred to existed prior to the date of the contract, this of January 28th must be regarded as doing away with, and to contain the entire agreements of, the parties at its date. The court holds the contract was not a sale of logs by Blake to defendants, but an agreement by Blake to furnish Hackley & Sons. to saw on shares, eighteen million feet of logs. Blake was to put the logs into Muskegon river during the winter of 1867 and 1868, and deliver to defendants in the booms of the booming company. in the spring, when the main drive of logs should be delivered at the booms.

Part of the logs were then in the river, on its banks, in the woods where cut, and others were being cut. The contract was executory. Hackley & Sons agree to take the logs when delivered as described, and saw them on shares, for one half the lumber they should make. The lumber was sent forward to market and sold to the best advantage. the net proceeds of sales to be equally divided between Blake, and Hackley & Sons. Hackley & Sons were to advance Blake four dollars on each thousand feet of logs, to enable him to put them in—on which, and other advances for rafting up and delivering to the mills, and other charges, Hackley & Sons were to receive interest. Both advances and interest were to be paid to them from the proceeds of the first lumber sold. Such is the contract, omitting the mortgage clause. Who was to ship the lumber and control its sale is not distinctly stated. But it is fairly inferable that Hackley & Sons were to do this, for the logs were to be delivered to them in the main boom, where they were to receive and saw them. The clause in reference to shipping and selling is incorporated among Hackley's agreements, and when shipping commenced in the spring, it appears Hackley shipped and controlled as to sales. This shows what the parties understood as to who was to have possession and sell. But outside of this fact, such the contract itself is held to be.

When the logs were in the booming company's booms, so as to be in defendants' possession, the defendants had possession, coupled with the right to saw the logs into lumber, and they could not be divested of that right, or of possession, either of the logs or lumber, by Blake or by his assignee, while defendants were in good faith proceeding on their part to execute and carry out the contract. They had made advances and were making other advances, and incurring expense so long as the logs were being sawed; and it is not the purpose of the bankrupt law to interfere with, or to avoid contracts made by the bankrupt with other parties, or to prevent their execution. Blake's interest and rights under that contract were, by the deed of assignment to Mr. Foster, transferred to him as assignee in bankruptcy. Whatever Blake's rights were under that contract, the assignee can claim and enforce. Blake could not lawfully claim possession of either logs or lumber sawed from them, and therefore the assignee has no such claim. But one-half of the net proceeds of the sales he may claim, and may undoubtedly recover in any appropriate form of action. Those net proceeds cannot, however, be recovered in this suit, as it is not the proper form of action, this being a suit in trover.

Gentlemen, under the views I have expressed, you will have nothing to do with the contract of January 25th, so far as relates to the question of the amount which the plaintiff is entitled to recover, if anything. So far as the question of fraud is concerned, the contract is evidence, but for no other purpose. The mortgage clause of the contract does not change in any respect the views already announced as to the construction and effect of the contract, and therefore requires no consideration. It is claimed by plaintiff's counsel that the sale of May 25th, which embraced the logs and lumber cut under the contract of January 25th, being valid as between Blake and Hackley, cancelled the January contract. This would be so if the sale of May 25th is not void, but if void—as it is under the bankrupt act, should the jury find that transaction a fraud on the provisions of the act—then the court holds that the contract of January 25th is not affected by the fraudulent transfer of May 25th, but remains of force and effect, and the rights of both plaintiff and defendants are to be determined under it, without reference to the void bill of sale. Then, gentlemen of the jury, if you shall find the transaction of May 25th, between Hackley and Blake, fraudulent and void, and that plaintiff has a right to recover from the personal property covered by the bills of sale of Blake to defendants, still you will reject all claim made for the value of both logs and lumber, covered by the contract of January 25th, known as the log contract, in making up the amount which the plaintiff is entitled to have. But this log contract does not cover the "crown" marked logs, nor the rafted lumber, &c. As to all personal property covered by the bills of sale—which defendants are shown to have converted, other than the logs and lumber covered by the log contract—you are at liberty to take into account an estimating damage.

The amount of damages, as I have before said, if you find for the plaintiff, will be the value of the property covered by instructions already given, at the time of conversion, with interest to this time.