## BOONVILLE NATIONAL BANK ET AL. *v.* BLAKEY, TRUSTEE.

[No. 20,715.   Filed January 5, 1906.   Rehearing denied May 8, 1906.]

1. AMENDMENTS.—*Nunc pro tunc.*—*After Judgment.*—Where a verified motion was filed after judgment and before the filing of a motion for a new trial praying that an entry *nunc pro tunc* be made to show the court's ruling on a motion made before the trial, and such entry was made, the record will be considered as properly amended.   p. 434.

2. SAME.—*Powers of Court to Order.*—*Proceedings in fieri.*— While the proceedings in a cause are *in fieri* amendments to the record may be ordered by the court by virtue of its inherent powers, a statute giving such right being unnecessary.   p. 434.

3. SAME.—*Final Judgment.*—*What Is.*—Where a motion for a separate trial was made by one defendant in a civil case, but no entry was made of the ruling thereon, a motion for an entry *nunc pro tunc*, made after judgment but before the filing of a motion for a new trial, was in time, since, as to such question, the denial of the motion for a new trial was the final judgment.   p. 435.

4. APPEAL AND ERROR. — *Amendments.* — *Nunc pro tunc.* — *Evidence.*—*Presumptions.*—The presumption is, in the absence of the evidence, that the evidence in support of an application for an entry *nunc pro tunc* was sufficient, and legally justified the making of such entry. p. 435.

5. BANKRUPTCY.—*Unlawful Preferences.*—*Demand.*—It is not necessary for a trustee in bankruptcy to make a demand for the return of an unlawful preference received by defendant in violation of §60b of the bankruptcy act of 1898 (30 Stat. 562, U. S. Comp. St. 1901, pp. 3445, 3446). p. 435.

6. SAME. — *Unlawful Preferences.* — Under §60b of the bankruptcy act of 1898 (30 Stat. 562, U. S. Comp. St. 1901, pp. 3445, 3446), providing that a voidable preference is received when the creditor had reasonable ground to believe that a preference was intended, and §3 of said act (30 Stat. 546, 547, U. S. Comp. St. 1901, pp. 3422, 3423), making it an act of bankruptcy for the debtor to transfer any property to his creditor with the intention of giving a preference, a creditor who receives a preference having reasonable grounds to believe it was so intended violates such statute and may be compelled to restore same. p. 437.

7. SAME. — *Unlawful Preferences.*—*Avoidance.*—*Election.*—The filing of an action to recover an alleged unlawful preference is sufficient to show an election by the trustee in bankruptcy to avoid such preference. p. 437.

8. SAME.—*Unlawful Preferences.*—*Validity Between Parties.*— The acts of giving and receiving an unlawful preference as specified in the bankruptcy law of 1898 (30 Stat. 544, U. S. Comp. St. 1901, p. 3418) are valid and binding as to the parties thereto. p. 438.

9. SAME.—*Unlawful Preferences.*—*Voidable or Void.*—An unlawful preference under the bankruptcy law of 1898 (30 Stat. 544, U. S. Comp. St. 1901, p. 3418) is voidable by the trustee in bankruptcy but not void. p. 438.

10. ASSUMPSIT.—*Money Had and Received.*—*Bankruptcy.*—*Unlawful Preferences.*—An action in assumpsit for money had and received lies on behalf of a trustee in bankruptcy to recover unlawful preferences received by defendant. p. 438.

11. PLEADING.—*Complaint.*—*Multifariousness.*—*How Questioned.* —Where some of the defendants moved that the causes contained in a complaint, alleged to be multifarious, be separately docketed as against each of them, and others subsequently moved for a separate trial by jury as to the causes alleged against them, the question of the multifariousness of such complaint is necessarily presented. p. 438.

12.  PLEADING. — *Complaint.* — *Theory.*—*Conspiracy.*—*Joint Liability.*—A complaint by a trustee in bankruptcy, showing that several of the defendants received unlawful preferences from the debtor, that some of them received fraudulent transfers of property from such debtor, and that such debtor conspired with each of such defendants to defraud such debtor's other creditors, and praying a recovery of such preferences and a setting aside of such transfers, does not state a joint liability on the part of defendants.   p. 439.

13.  ACTION. — *Joinder.* — *Bankruptcy.* — *Recovery of Unlawful Preferences.*—*Setting Aside Fraudulent Conveyances.*—Separate causes of action for the recovery of alleged unlawful preferences in bankruptcy as to certain defendants and for the setting aside of alleged fraudulent conveyances as to others cannot be joined in the same suit.   p. 440.

14.  SAME.—*Joinder of Equitable Causes.*—Separate suits in equity against different defendants may not be joined where the result might be to confound the issues and make extra costs, and this rule applies though the questions of fact to be determined are similar in many respects and grow out of the administration of the same estate.   p. 440.

15.  SAME.—*Joinder.*—*Recovery of Unlawful Preferences.*—*Setting Aside Fraudulent Conveyances.*—*Principal Question.*—The leading question in suits to set aside fraudulent conveyances is the fraudulent intent of the grantors, but for the recovery of unlawful preferences in bankruptcy the prominent question is whether defendant had reasonable cause to believe the debtor was insolvent, and such actions should not ordinarily be joined.   p. 441.

16.  SAME. — *Recovery of Unlawful Preferences.* — *Concurrent Jurisdiction of Law and Equity.*—Courts of law and equity have concurrent jurisdiction in suits for the recovery of unlawful preferences in bankruptcy where the amount is definite, an accounting is unnecessary, and no fiduciary relation exists.   p. 442.

17.  SAME.—*Equity.*—*Multiplicity of Actions.*—*Jury.*—The mere fact that plaintiff has several actions of a similar nature to bring against several defendants is not sufficient to give a right to join such actions in a suit in equity, especially where the result is to deprive the defendants of their right to a trial by jury, and where several issues were made as to each defendant, there being no conspiracy shown as to defendants.   p. 443.

18.  APPEAL AND ERROR.—*Misjoinder of Causes.*—Under §344 Burns 1901, §341 R. S. 1881, the erroneous overruling of a demurrer for misjoinder of causes of action is not reversible on appeal.   p. 447.

19. ACTION.—*Parties.*—*Misjoinder.*—*How Questioned.*—A complaint against several defendants for the recovery of alleged unlawful preferences and against others to set aside alleged fraudulent conveyances involves a misjoinder of parties, and the defect is reached by a motion and not by a demurrer. p. 447.

20. TRIAL.—*Jury.*—*Right of Trial by.*—*Waiver.*—Defendants in a suit for the recovery of alleged unlawful preferences do not waive their right to a jury trial by failing to object to the misjoinder of parties before the closing of the issues, since §412 Burns 1901, §409 R. S. 1881, gives them a right to such trial, which right they had not impliedly waived, nor expressly waived as prescribed by §559 Burns 1901, §550 R. S. 1881. p. 447.

21. ACTION. — *Misjoinder of Parties.* — *Powers of Court.* — The court, upon its own motion, has the power to separate causes of action where there has been a misjoinder of parties.　p. 448.

22. TRIAL. — *Separate.*—*Motions for.*—*Discretion.*—*Abuse.*—*Appeal and Error.*—Motions by defendants for separate trials, for good cause shown, are grantable in the discretion of the court, and such discretion is reviewable on appeal only for an abuse thereof.　p. 448.

23. SAME. — *Misjoinder.*—*Separate.*—*Discretion.*—*Abuse.*—It is an abuse of discretion to refuse separate trials to defendants improperly joined in a suit, where the issues are separate and distinct, and where such defendants have previously moved to docket such causes separately.　p. 448.

24. SAME. — *Erroneous Ruling.* — *Presumptions.* — *Appeal and Error.*—A plainly erroneous ruling imports prejudice unless the contrary affirmatively appears, the presumption being that the court adhered to such ruling.　p. 449.

25. SAME.—*Bills in Equity.*—*Conspiracy.*—*Failure to Prove.*—Where the only ground for a bill in equity was the alleged conspiracy of defendants, a failure to prove same is reversible error as against plaintiff, though the evidence showed causes of action against such defendants separately.　p. 450.

26. ACTION.—*Pleading.*—*Tort.*—*Conspiracy.*—*When Material.*—Allegations of conspiracy in cases of tort are immaterial unless the wrong would not be actionable except for such conspiracy. p. 450.

27. TRIAL. — *Equity.* — *Law.* — *Recovery.* — *Jury.* — *Evidence.* — Where plaintiff, by certain allegations, joins defendants in an equity suit, and fails to sustain such allegations, he can not deprive defendants of the right of trial by jury by maintaining that the evidence disclosed a good cause of action against each defendant regardless of such allegations.　p. 450.

From Perry Circuit Court; *C. W. Cook,* Judge.

Suit by William Blakey, as trustee in bankruptcy of the estate of Marion Folsom, bankrupt, against the Boonville National Bank and others. From a decree for plaintiff, defendants appeal. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Frank B. Posey, Alfred Butsch, L. A. Folsom, Edward Gough, J. E. Williamson, C. W. Armstrong, H. Fulling* and *Hatfields & Hemenway,* for appellants.

*John E. Iglehart, Edwin Taylor, John C. Strother* and *Eugene H. Iglehart,* for appellee.

GILLETT, C. J.—Appellee instituted this suit against the Boonville National Bank, of Boonville, Indiana, the People's Bank, of Boonville, Indiana, Herbert E. Hoggatt, John G. Shryock, Laura Folsom, Charles M. Hammond and Truman P. Tillman. The four defendants first above mentioned are appellants in this court, and have filed separate assignments of error. The remaining defendants were successful below.

By the complaint, which is in one paragraph, appellee, a trustee in bankruptcy of Marion Folsom, sought to recover from each appellant the amount of a payment received by such appellant from said Folsom, together with interest, on the theory that such payment was made and accepted as a preference. As to the defendants Hammond and Tillman, it was sought to set aside a transfer of choses in action which they had received from said Folsom, and Laura Folsom was made a party for the purpose of setting aside a conveyance of real estate which said bankrupt had caused to be made to her. Although there are collective allegations as to the condition of the debtor's estate, as to his fraudulent purpose in doing the several acts charged, and as to the facts concerning his subsequent bankruptcy, yet there are separate averments concerning each of the alleged preferences received by appellants re-

spectively, and as to them it may be fairly said that, in substance, the complaint is really a group of suits or actions to charge each on account of a preference received. There is an allegation or claim that appellee is entitled to an accounting, but the amount which each appellant received is definitely alleged. There are averments concerning a combination, as follows: "Plaintiff further avers that defendant Marion Folsom, being then and there insolvent as aforesaid, and intending to prefer his said creditors, and to cheat, hinder and delay all of his creditors, came to a fraudulent determination and entered into a fraudulent and secret combination with defendants, and each of them, so to manage and conceal all of his said property and pay the proceeds of the same out so as to delay and defraud all other of his creditors, including all of his trade creditors, which represented about the sum of $10,000, and in the fulfilment of said fraudulent designs, and without any fair consideration paid to him by any of the defendants, he made each and all of the transfers hereinbefore set out." The complaint also contains the following language: "Plaintiff avers that if he brings a separate suit against each of the defendants there will be a multiplicity of suits, causing great and unnecessary delay, inconvenience and expense, and that most, if not all of the time, labor, testimony and expense necessary to procure and defend each of said suits separately may be incurred, done and taken once for each and all of the controversies arising upon the facts hereinbefore set out, and without unnecessary inconvenience or expense to any of the defendants. * * * Plaintiff further avers that he is entitled to an accounting from each of the defendants, as to the amount received by each of them, and he is entitled to have the estate of said bankrupt, which was scattered into the hands and into the possession of the several defendants, as hereinbefore set out, gathered together and returned to him, the plaintiff, to be disposed of according to law for the benefit of the cred-

itors of said defendant Marion Folsom, and said pretended deed from said Frank Hatfield to the defendant Laura Folsom ought to be set aside as fraudulent, and the title to said land therein decreed to be the land of the defendant Marion Folsom, and a part of his estate, to be sold as such." As to appellants, the prayer is that each defendant be required to account, in order to determine what portion such defendant received, and that each be decreed to pay back the payment alleged to have been received, together with interest.

The Boonville National Bank filed a motion that the court "separately docket the plaintiff's cause of action against itself, to the end that issues may be formed and a trial had upon the controversies between the plaintiff and this defendant free and independent of separate and distinct controversies between the plaintiff and other defendants herein." The People's Bank filed a motion to the same effect. Both of these motions were overruled, and exceptions were reserved. Each of the appellants filed a demurrer to the complaint, assigning, as grounds, a want of facts to constitute a cause of action and an improper joinder of causes of action. The demurrers were overruled. Hoggatt filed a motion to separate and for a separate trial, but this motion does not appear to have been ruled on. Appellants separately filed answer, and the issues were closed by replies to such of the paragraphs of answer as were special. Appellants Hoggatt and Shryock subsequently filed motions for separate trials by jury. These motions were overruled, and exceptions were taken. There was a trial by the court, which resulted in a finding for appellee against appellants, and separate judgments were rendered thereon against each for the amount of the payment alleged to have been received by such appellant, together with interest.

Up to this time we have not mentioned the separate motions of appellant banks for a separate trial, because

appellee is insisting that there is not a proper record
1.    of the overruling of this motion and of the reserva-
tion of an exception. At the April term the record
was amended to show such entry as of the preceding No-
vember term. The finding and judgment was at the April
term, and the proceedings to amend had as their basis a
verified motion in writing, which was filed between the
entry of judgment and the filing of a motion for a new
trial. We are of opinion that the record must be treated
as having been amended.

A materially different rule exists with respect to the
power of amendment while the proceedings are *in fieri.*
Up to that time the authority to permit amend-
2.    ments is inherent in the court, and does not depend
upon statute. *Anonymous* (1694), 1 Salk. 47;
*Banfield* v. *Milner* (1760), 2 Burr. 1098; *Mace* v. *Lovett*
(1772), 5 Burr. 2833; 1 Tidd's Practice (7th Am. ed.),
711. Blackstone states that the courts, "where justice re-
quires it, will allow of amendments at any time while the
suit is pending, notwithstanding the record be made up, and
the term be past. For they at present consider the proceedings
as *in fieri,* till judgment is given; and therefore, that till
then they have power to permit amendments by the common
law: but when judgment is once given and enrolled, no
amendment is permitted in any subsequent term." 3
Blackstone's Comm., *407. Aside from legislative enact-
ment, the consideration of giving stability to judgments
plainly requires that errors in judicial proceedings which
are sought to be avoided after the opposite party has gone
out of court should be evidenced in some peculiarly au-
thentic way; but up to the time that the cause ceases to be
*in fieri* the court ought not to be, and is not, powerless to
relieve itself of the omission of its clerk to enter an inter-
mediate order which was actually made. Up to that time
it is within the power of the court to make its records speak
the truth. *Horn* v. *Indianapolis Nat. Bank* (1890), 125

Ind. 381, 9 L. R. A. 676, 21 Am. St. 231; *Bilansky* v. *State* (1859), 3 Minn. 427; 1 Elliott, Gen. Prac., §192. As was said in the Horn case: "The proceedings were, therefore, *in fieri* at the time the *nunc pro tunc* entry was made, and hence it was clearly within the power of the court to make its record speak the truth. The rule which applies in cases where the action has been fully terminated by final judgment is not relevant to such a case as this."

Here it was necessary to file a motion for a new trial, to bring the error, if any, of denying a separate trial forward, and therefore the order overruling the motion stood to all intents and purposes as the final judgment. *New York, etc., R. Co.* v. *Doane* (1886), 105 Ind. 92; *Colchen* v. *Ninde* (1889), 120 Ind. 88. Until that time the plaintiff was in court, and the litigation was not at an end (*Johnson* v. *Gebhauer* [1902], 159 Ind. 271), so we think that the case was plainly one in which the proceedings were still *in fieri*. But if we should be mistaken in this, we must assume that the record was properly amended. Whether there was sufficient evidence to authorize an amendment was a question of fact (1 Freeman, Judgments [4th ed.], §63), and as the record does not reveal the fact as to whether the court acted on any further evidence than the verified application and the affidavit in support thereof, we are bound to presume that the evidence was sufficient to warrant the amendment of the order. *Salem-Bedford Stone Co.* v. *O'Brien* (1898), 150 Ind. 656.

But one objection to the complaint is urged in support of the demurrer for want of facts, and that is that a demand was not alleged. It is contended by counsel for appellants that as a preference is only voidable under section 60b of the bankruptcy act of 1898 (30 Stat. 562, U. S. Comp. St. 1901, pp. 3445, 3446), there must be an election to avoid the payment before the

creditor's possession can be rendered wrongful. It was held in *Nixon* v. *Jenkins* (1793), 2 H. Bl. 135, which was an action of trover for the value of goods transferred in contemplation of insolvency, that a demand and a refusal were necessary to furnish the requisite evidence of a conversion. It was subsequently held, however, in *Marks* v. *Feldman* (1870), 10 Best & S. 371, L. R. 5 Q. B. 275, where a person had received a bill of sale of goods, the transaction being voidable under the bankruptcy law, and had sold the goods before the appointment of the assignee, that the purchaser could be held liable for money had and received. Although the question as to whether a demand was necessary was not discussed in that case, yet the reasoning of Kelly, C. B., relative to the contention that at the time of the conversion by the purchaser his possession was not wrongful, affords a basis for the conclusion that a demand is not necessary. We quote as follows from said opinion: "If a man before his bankruptcy, but at a time when he contemplates bankruptcy, delivers goods or money into the hands of a creditor whom he intends to benefit, the transaction is valid as between the parties, and if no bankruptcy intervene the receiver of the goods or money is entitled to insist on the transaction as valid against all the world. But when an act of bankruptcy follows, and there is an adjudication in bankruptcy against the transferor or donor, the transaction is in point of law a fraudulent preference; not under any express enactment but as contrary to the policy of the bankruptcy laws.  *  *  *  Is the case altered by the circumstance of the defendant's having sold the goods and possessed himself of the money, the proceeds of the goods, before the transaction was avoided? I am of opinion that it is not, and that it is a fallacy to say that the transaction was valid to all intents and purposes after the conversion of the goods into money. Whether the transferee remains possessed of the goods or converts them

into money, the transaction retains its original character; it is valid as against the transferee, but voidable if the assignee elects to avoid it."

Under the terms of section 60b of the bankruptcy act, *supra,* one of the elements of a voidable preference is that the person to be benefited by the transaction shall

6.   have "had reasonable cause to believe that it was intended thereby to give a preference." Under section three of said act, an insolvent debtor who transfers any portion of his property to a creditor with intent to prefer such creditor, commits an act of bankruptcy. It is therefore plain that a creditor who receives a preference, having reasonable cause to believe that it was so intended, violates the very heart and spirit of the act, which is to secure a just distribution of the assets of the insolvent. It has been said that the unlawful receiving of a preference is an inchoate fraud. Lowell, Bankruptcy, 77; *Tapley* v. *Forbes* (1861), 2 Allen 20; *Foster* v. *Hackley* (1869), 2 Nat. Bank. Reg. 406, Fed. Cas. No. 4,971. In such circumstances the creditor is not only in the attitude of violating the statute, but he stands charged with knowledge that the giving of the preference affords a ground for casting his debtor into involuntary bankruptcy, and thus precipitating a condition of affairs in which the law declares the transaction voidable. When, therefore, within four months, a petition is filed, and, as a result of the proceedings, a trustee is appointed, who has the right, as an incident of his office, to avoid the preference, and who is expected to do so, if it be advantageous to the estate to pursue the assets in the hands of the creditor, there would seem to be no reason for requiring the trustee to make demand before instituting an action. An ordinary action for fraud can be maintained without a demand,

7.   where the plaintiff has nothing which he is called on to tender back. In such a case the transaction would be merely voidable, and upon the same principle it

would seem that an election to avoid a fraudulent prefer-
ence may be manifested by a suit.    Indeed, the
standing of such a preference is in most respects
like unto a fraudulent conveyance.    It is valid as
to the grantor, but creditors are not bound by it.    The
only difference, in substance, is that in the case of a
fraudulent transfer within the statute of frauds
the transaction is void as to creditors, and therefore
they may treat it as such by levying upon the
property; while, in the case of a preference, the transac-
tion being voidable, an action must be brought.    The rea-
son for the use of the word "voidable" in section 60b of
the bankruptcy act is found in the fact that it has to do
with creditors whose debts have been liquidated.    As such
a transaction may be so far beneficial to the estate as not
to warrant the bringing of an action, it may be assumed
that it was deemed improper to use the word void in that
connection.    But, in any event, appellants, under the aver-
ments of the complaint, were guilty of fraud in
receiving the payments respectively made to them,
and in such a case an action for money had and
received will lie, for the law will imply a promise, if the
person who is authorized to avoid a fraudulent preference
manifests his election to do so by suit.    *Hogan* v. *Shee*
(1797), 2 Esp. 522; *Lyon* v. *Annable* (1822), 4 Conn.
350; 9 Am. and Eng. Ency. Law (2d ed.), 207; 1 Cyc.
Law and Proc., 694, 695.

The parties seem to have treated as properly presented
the question whether the court erred in overruling the
motions of appellant banks to docket separately the
plaintiff's cause of action against each of them.
The question of multifariousness is in the case
as to all of the appellants, because the propriety of the sub-
sequent rulings depend upon the complaint, and we shall
therefore discuss this question.    Appellee's counsel con-
tend that a suit to set aside a preference is properly brought

in equity; that the complaint, in practical effect, is to set aside a fraudulent transfer under section 67e of the bankruptcy act; that the allegation that an accounting is necessary, and the averments concerning the avoiding of a multiplicity of actions authorized a suit in equity; and, finally, that the allegation of a conspiracy authorized the joinder of all of the defendants alleged to have received preferences with a defendant alleged to have received a fraudulent conveyance, and that therefore the whole matter was properly drawn into equity. We are of opinion that these contentions cannot be upheld.

One of the most important of the questions which underlie the matter under consideration is whether, in any portion of the complaint, there appears to be a vital connection in the payments and other transactions complained of. The averment concerning a conspiracy is very limited. There is no charge of a combination as between the defendants. The charge is, in effect, that Marion Folsom entered into a conspiracy with each defendant to defraud all others of said Folsom's creditors. It does not appear that the alleged conspiracy was on foot when the debtor made the several payments and transfers which are complained of, but merely that the debtor made them in fulfillment of such fraudulent designs. Besides, there is a paucity of fact as to what was the subject-matter of the conspiracy; whether the combination charged "to manage and conceal all of his (Folsom's) property and pay the proceeds of the same out so as to delay and defraud all others of his creditors," was a combination to make the particular payments and transfers complained of, does not appear. But one thing is certain, and that is that the complaint was not framed on the theory of a joint liability. The theory of the complaint is that appellee is entitled to recover from each defendant who received a payment the amount of such payment and interest, and that the other transfers should be set aside. By this theory, therefore,

the complaint must be judged. *Elliott* v. *Pontius* (1894), 136 Ind. 641.

It is clear, we take it, that the causes of action stated against appellants are essentially distinct, and especially does it appear to us that there was no warrant for joining an action to recover the amount of a preference with an action to set aside a fraudulent conveyance. The procedure in courts of law is much less plastic than in equity, owing to the fact that a judgment cannot be molded to fit particular circumstances to the extent that may be done by decree, but it can be shown, as we think, that even in chancery there are limitations upon the right to join defendants for the purpose of litigating controversies in which the defendants have no common concern. Multifariousness, or the improper joining in one bill of distinct and independent matters, is a ground of demurrer in equity. Story, Eq. Plead. (9th ed.), §271.

Where the joinder is of suits which are wholly of equitable cognizance, the objections to multifariousness are the tendency to render the pleadings prolix, to confound the proofs, and to load a defendant with an unnecessary burden of costs. Story, Eq. Plead. (9th ed.), §271. As the result of such a joinder does not go to that which is vital or essential, it is in many cases a matter of discretion with the chancellor whether the plaintiff shall be required to separate. *Campbell* v. *Mackay* (1836), 1 Myl. & Cr. 603; *Gaines* v. *Chew* (1844), 2 How. 619, 642, 11 L. Ed. 402; *Eastern, etc., Loan Assn.* v. *Denton* (1895), 65 Fed. 569, 13 C. C. A. 44; *Stephens* v. *Whitehead* (1885), 75 Ga. 294; Story, Eq. Plead. (9th ed.), §533. We are not called on precisely to determine the extent of the right to join parties defendant in equity, but it is clear that the existence of similar questions of fact is not enough to warrant such joinder. *Ward* v. *Duke of Northumberland* (1795), 2 Ans. 469; *Salvidge* v. *Hyde* (1821), Jac. 151; *Campbell* v. *Mackay, supra; Hale* v.

*Allinson* (1903), 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380. And the mere fact that each demand is asserted as a right growing out of the administration of an estate, so that each case involves some common elements of fact, will not warrant the joining of separate claims against defendants growing out of different transactions and involving material inquiries which are essentially foreign to each other. *Salvidge* v. *Hyde, supra;* *Hale* v. *Allinson, supra* (same case 102 Fed. 790); *Tompkins* v. *Craig* (1899), 93 Fed. 885. See *Galway* v. *State, ex rel.* (1884), 93 Ind. 161. In the leading case of *Campbell* v. *Mackay, supra,* Lord Cottenham, in referring to *Salvidge* v. *Hyde, supra,* indulged in the following observations: "Sir John Leach's judgment proceeded upon the principle, that as the primary object of the suit was the administration of the estate, and the estate could not be effectually administered without ascertaining whether the sale was to stand or be set aside, the purchaser was properly made a party on the record, with a view to the decision of that question. When the demurrer came before Lord Eldon on appeal, his lordship did not consider that circumstance a sufficient ground of exception to the general rule; and he held, that the defendant claiming as a purchaser from the executor had a perfectly distinct case, and had a right to have that case discussed and decided by itself, without being mixed up in a suit for the general administration of the estate."

Appellee's counsel urge upon our attention a line of cases in which it is held that persons who have received separate, fraudulent conveyances, alleged to have been made voluntarily in pursuance of a plan upon the part of the grantor to strip himself of his property, may be joined as defendants. These cases are distinguishable from the case at bar, in that the sole question involved in the cases cited was the fraud of the grantor, and also in that all of the involved suits were distinctively equitable in their nature. Here the question as to whether

each of appellants had reasonable cause to believe that a preference was intended was an essential question in the case. Section 60b, bankruptcy act; *Pirie* v. *Chicago, etc., Trust Co.* (1901), 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171; *Blakey* v. *Boonville Nat. Bank* (1899), 95 Fed. 267; *In re Ft. Wayne Electric Corp.* (1900), 99 Fed. 400, 39 C. C. A. 582; *In re Eggert* (1900), 102 Fed. 735, 43 C. C. A. 1. Preferences can only be given to creditors, and the provisions of section 60b of the act are not to be confounded with those of section 67e. In the nature of things the questions which would be common to all of the defendants in such a suit as this would likely be the subsidiary questions, while the questions as to whether each of the appellants had reasonable cause to believe that a preference was intended would likely be the important questions, and it would also be probable that the inquiries concerning them would prove widely divergent.

At this point we pause to inquire as to the nature of the primary rights asserted by appellee against appellants, because, if a court of law would have concurrent jurisdiction in such a case (if separately brought), there is here involved something more than the considerations which prompt courts of equity to require disconnected suits against separate defendants to be independently maintained. As the controversies in question grow out of the administration of an estate, and as there is involved a charge of fraud, we would not be understood as asserting that a preference might not be avoided by a bill in equity. The point we assert is that the jurisdiction of a court of law is concurrent in such a case. Appellee stands upon a statutory right, and not upon any equitable title. No fiduciary relation is shown to exist. The amount received is definitely alleged, and the necessity for an accounting does not appear. *Field* v. *Brown* (1896), 146 Ind. 293. The unlawful receipt of a preference does not constitute the payee the trustee of a tech-

nical and continuing trust which would be solely cognizable in equity. *Sheaf* v. *Dodge* (1903), 161 Ind. 270. Nor does the fact that a charge of fraud is involved limit the jurisdiction to a court of chancery. Since the invention of assumpsit, case and trover, where equitable principles are to be considered, there is an ample remedy at law in such a case as this. 2 Pomeroy, Eq. Jurisp. (3d ed.), §912; *Tompkins* v. *Craig* (1899), 93 Fed. 885. In fact, that seems to be the ordinary method of procedure. *Nixon* v. *Jenkins* (1793), 2 H. Bl. 135; *Marks* v. *Feldman* (1870), 10 Best & S. 371, L. R. 5 Q. B. 275; *Farrow* v. *Mayes* (1852), 18 Q. B. 513; *Foster* v. *Hackley* (1869), 2 Nat. Bank. Reg. 406, Fed. Cas. No. 4,971; *Shuman* v. *Fleck-enstein* (1877), Fed. Cas. No. 12,826; Lowell, Bankruptcy, 77, 81.

Of course, there is no question as to the right of a court of equity to entertain jurisdiction for the express purpose of avoiding a multiplicity of actions at law. But it must in some way make for justice to warrant the court in exercising its jurisdiction. The mere fact that a plaintiff has many actions to bring is not always enough. *Hale* v. *Allinson, supra* (same case 102 Fed. 790); *Zanhizer* v. *Hefner* (1900), 47 W. Va. 418, 35 S. E. 4; *Doggett* v. *Hart* (1853), 5 Fla. 215, 58 Am. Dec. 464; *Hughes* v. *Hannah* (1897), 39 Fla. 365, 22 South. 613. Here it is to be perceived that the objection to the joinder of the demands goes further than a mere matter of convenience. It involves, if carried to its logical result, the denial of a jury trial. Each one of the involved suits or demands against appellants was one in which, as a court of law would have had concurrent jurisdiction in such a case prior to June 18, 1852, there would have been a right of trial by jury. *Galway* v. *State, ex rel., supra; Martin* v. *Martin* (1889), 118 Ind. 227; *Peden* v. *Cavins* (1893), 134 Ind. 494, 39 Am. St. 276.

As a court of equity would sustain a demurrer to a bill on the ground that it was multifarious, where it involved

essentially separate controversies as to the defendants, and this, notwithstanding the fact that it involved matters cognizable only in equity, what is to be said of a bill in which the objection goes deeper than that which attends multifariousness; a bill in which, on mere allegations of a saving of expense and a promotion of convenience, it is sought to deprive a defendant of an essential right, which it is to be borne in mind would have existed, had there been no confusion of the issues, whether the proceeding took the form of an action at law or a bill in equity? The opinion in *Hale* v. *Allinson, supra,* contains a discussion which throws some light on this question. That case had its origin in a bill in equity filed by the receiver of an insolvent corporation to compel forty-seven defendants severally to respond on account of an alleged stockholders' liability, asserted under a statute. In holding that a demurrer for multifariousness was properly sustained, the court, after referring to Professor Pomeroy's discussion of the subject of parties in equity, said: "To say whether a particular case comes within the principle is sometimes a much more difficult task. Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation and will be an actual convenience to all parties, and will not unreasonably overlook or obstruct the material interests of any. The single fact that a multiplicity of suits may be prevented by this assumption of jurisdiction is not in all cases

enough to sustain it. It might be that the exercise of equitable jurisdiction on this ground, while preventing a formal multiplicity of suits, would nevertheless be attended with more and deeper inconvenience to the defendants than would be compensated for by the convenience of a single plaintiff, and where the case is not covered by any controlling precedent, the inconvenience might constitute good ground for denying jurisdiction." It was said by McPherson, J., in *Hale* v. *Allison* (1900), 102 Fed. 790, in passing upon the question of the joinder of defendants: "The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons." In the latest edition of Professor Pomeroy's work on equity jurisprudence, it is stated: "The equity suit must result in a simplification or consolidation of the issues; if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction. In such a case, 'while the bill has only one number upon the docket and calls itself a separate proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others, but rests nevertheless upon the separate and distinct liability of one defendant.' " 1 Pomeroy, Eq. Jurisp. (3d ed.), §251½.

In *Scott* v. *Neely* (1891), 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, the Supreme Court of the United

States had occasion to refer to the provision of the judiciary act of 1789, that suits in equity "shall not be sustained in either of the courts of the United States, in any case where plain, adequate and complete remedy may be had at law." In commenting on this provision Mr. Justice Field, speaking for the court, said: "It is declaratory of the rule obtaining and controlling in equity proceedings from the earliest period in England, and always in this country. And so it has been often adjudged that whenever, respecting any right violated, a court of law is competent to render a judgment affording a plain, adequate and complete remedy, the party aggrieved must seek his remedy in such court, not only because the defendant has a constitutional right to a trial by jury, but because of the prohibition of the act of congress to pursue his remedy in such cases in a court of equity." Of course, circumstances could readily be imagined in which the remedy at law would not be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity, but to justify the interposition of a court of chancery on the ground that a multiplicity of actions at law will be avoided, the court ought to be able to perceive from the issues tendered and the averments in aid of the jurisdiction that the bill, if entertained, will not be multifarious, that the questions involved are of such a nature that a multiplicity of actions will in fact be avoided, and that the avoidance of such actions will promote justice; and especially is this true when it is proposed to draw into one bill matters cognizable at law as to some defendants and matters only cognizable in equity as to others.

As the complaint in this case tendered a several issue as to each of the parties defendant, it is our opinion, at least in the absence of a sufficient averment of a conspiracy between the defendants, that the court was not justified in accepting the general conclusions of the plaintiff to the effect that the course pursued would prove more convenient

and less expensive. These averments may have been based on the ill-founded contention of counsel for appellee that the question of the good faith of appellants was not involved; but in any event the question as to whether a multiplicity of actions will probably be avoided must largely depend upon whether essentially separate actions are involved under the issues tendered.

We come now to the question whether the demurrers of appellants Hoggatt and Shryock, assigning the sixth statutory ground of demurrer, "that several causes of action have been improperly joined," were well taken. The statute refers to a misjoinder of causes of action, and for this the court is not authorized to reverse. Section 344 Burns 1901, §341 R. S. 1881. Here the misjoinder was of parties, and the objection should have been taken by motion. *Lane* v. *State, ex rel.* (1866), 27 Ind. 108.

Said appellants Hoggatt and Shryock further complain of the ruling of the court below denying their separate motions for separate trials by jury. Appellee's counsel contend that as the issues had been closed on a bill in equity the motions were properly overruled. It is to be noted in this connection that the defendants had filed separate answers. Section 412 Burns 1901, §409 R. S. 1881, provides: "Issues of law and issues of fact in causes that, prior to the 18th day of June, 1852, were of exclusive[ly] equitable jurisdiction, shall be tried by the court; issues of fact in all other causes shall be triable as the same are now triable. In case of the joinder of causes of action or defenses which, prior to said date, were of exclusive[ly] equitable jurisdiction, with causes of action or defenses which, prior to said date, were designated as actions at law and triable by jury—the former shall be triable by the court, and the latter by a jury, unless waived; the trial of both may be at the same time or at different times, as the court may direct." Section 559

Burns 1901, §550 R. S. 1881, is as follows: "The trial by jury may be waived by the parties, in all actions, in the following manner: First. By failing to appear at the trial. Second. By a written consent in person or by attorney, filed with the clerk. Third. By oral consent in open court, entered on the record." While it does not admit of doubt that there may be an implied waiver of the right of a jury trial, yet such waiver will not be predicated upon a doubtful implication. *Stedham* v. *Stedham* (1858), 32 Ala. 525; *Hinchly* v. *Machine* (1836), 15 N. J. L. 476; *Bradley* v. *Aldrich* (1869), 40 N. Y. 504, 100 Am. Dec. 528. Here it is to be recollected that if any difficulty existed in awarding to said appellants their right under the law to a trial by jury, that difficulty had been created by appellee. And if the court was dissatisfied with the course of appellee in the misjoinder of parties, it had the power, *sua sponte,* to order a separation of the actions. We are of opinion, however, after a study of the framework of the complaint, that there would have been practically no difficulty in presenting to a jury under appropriate instructions the issues tendered as to each of appellants. The motion, by its very nature, indicated what issues should be so presented, and we are unwilling to hold, in view of the essential character of the right and the language of the statutes quoted, that a waiver existed. *Bradley* v. *Aldrich, supra.*

We come now to the motion of each bank that it be awarded a separate trial. A motion for a separate trial is one which the practice recognizes, and it may be allowed for good cause. *Carpenter* v. *Crane* (1839), 5 Blackf. 119; *Dougherty* v. *Dorsey* (1815), 4 Bibb 207; 19 Ency. Pl. and Pr., 533. While the granting of the motion in proper cases is ordinarily within the discretion of the court, yet where there has been an improper joining of causes of action which are distinct as to the defendants, the overruling of the motion constitutes an abuse of discretion. *Rosser*

v. *Cheney* (1880), 64 Ga. 564; *Ballard* v. *Perry* (1866), 28 Tex. 347; *Judson* v. *Malloy* (1870), 40 Cal. 299; 19 Ency. Pl. and Pr., 535. Especially is this true where, as here, the defendants had made a timely motion separately to docket the actions. It cannot be that by a wrongful joining of six essentially separate cases a plaintiff can compel the defendants to agree upon lines of policy with reference to the examination of witnesses and as to the presentation of the cause generally. Even upon a trial before the court there would be danger that the court might confuse the evidence as between the defendants, and, situated as appellants were, they might well have refrained from asking for a jury because the danger of a confusing of the testimony would have been still greater. It should have been assumed that the denial of the motion would be prejudicial. *Judson* v. *Malloy, supra.* We do not mean to intimate that upon every possible condition of the record this court would hold that the denial of a motion to separate which should have been granted would constitute error; but the law is, that where a plainly erroneous ruling is made, the presumption will be indulged that prejudice results, in the absence of a showing to the contrary. The ruling indicated a radically wrong theory concerning the legal rights of the parties, which, in the absence of a countervailing ruling or indication, it must be presumed upon appeal the court subsequently adhered to. Elliott, App. Proc., §591; *Wheeler* v. *Me-shing-go-me-sia* (1868), 30 Ind. 402. And see *Epperson* v. *Hostetter* (1884), 95 Ind. 583; *Thompson* v. *Lowe* (1887), 111 Ind. 272; *Messick* v. *Midland R. Co.* (1891), 128 Ind. 81; *Bradshaw* v. *VanWinkle* (1892), 133 Ind. 134. As stated in the work above cited: "A case tried on a wrong theory generally results in a wrong judgment." Elliott, App. Proc., §591, note. There was but one theory as to the law which would have justified, in view of the issues,

the overruling of the motions, and that was the theory which has been strenuously urged on us by counsel for appellee—that the good faith of appellants was not an element·in the case. This erroneous theory, we must presume from the rulings on the motions to separate, infected the result. The fact that a separate trial by jury was denied to the other appellants confirms this view. Indeed, if we were at liberty to examine the opinion of the court below, which appellee has moved to strike from the record in case of affirmance, a very concrete evidence of the existence of said theory might be found.

But even if the position should be sanctioned, that the charge of a conspiracy was sufficient to avoid the objection of multifariousness, so as to bring the case within the principle of the old equity rule that the defendants should so far answer the bill as to deny the conspiracy (Mitford, Ch. Plead., 208), still the cause must be reversed, because there was no evidence which even tended to prove a combination as between the defendants.

It is true that in an action for tort the allegation of a conspiracy is immaterial, so far as the cause and ground of the action is concerned, unless the wrong would not have been actionable at all but for the unlawful combination (*Jenner* v. *Carson* [1887], 111 Ind. 522; *Severinghaus* v. *Beckman* [1894], 9 Ind. App. 388, and·cases cited; *City of Boston* v. *Simmons* [1890], 150 Mass. 461, 23 N. E. 210, 6 L. R. A. 629, 15 Am. St. 230; 8 Cyc. Law and Proc., 674, 692), but here such allegation, if sufficient, afforded the only basis for a joinder of the defendants in a bill in equity. The former practice in chancery was to dismiss the bill when it was disclosed that there was no ground for equitable interference, even though a cause of action at law appeared to exist, and under the code, where law and equity are administered in the same court, a plaintiff cannot be permitted to deprive the defendant of the right to a jury trial

by the making of allegations whereby an equitable issue is tendered, and then maintain the finding on the ground that sufficient facts were shown to warrant a recovery in a court of law. *Bradley* v. *Aldrich, supra; Brinckerhoff* v. *Bostwick* (1887), 105 N. Y. 567, 12 N. E. 58. As was said by Mr. Justice Peckham, in the case last cited: "When a party alleges a cause of action of an equitable nature he must prove one, so far as the question of a trial by jury is concerned, and he cannot escape such tribunal by alleging an equitable cause of action, and, while wholly failing to prove it, obtain a trial by the court of a common-law action arising out of the transaction."

Counsel for appellee contend that the evidence is not in the record, but it is sufficient to say that the point is not well taken. The initial errors, however, antedated the trial, and because of them there must be a reversal. The judgment is reversed, with an order for further proceedings in accordance with this opinion.