KLOTZ ET AL. *v.* FIRST NATIONAL BANK OF HAM-
MOND ET AL.

[No. 11,188. Filed February 23, 1922. Rehearing denied June 1,
1922. Transfer denied November 17, 1922.]

1. BANKS AND BANKING.—*Insolvency.*—*Stockholder's Liability.*
—*Exhaustion of Assets.*—*Burden of Proof.*—*Statutes.*—In an
action by creditors against stockholders of an insolvent trust
company to enforce stockholders' individual liability under
§4947 Burns 1914, Acts 1893 p. 344, it was incumbent upon
plaintiffs to allege and prove that the assets of the trust com-
pany had been exhausted. p. 682.

2. BANKS AND BANKING.—*Insolvency.*—*Stockholder's Liability.*
—*Enforcement.*—*General Denial.*—*Issues.*—*Exhaustion of As-
sets.*—*Statutes.*—In an action by creditors against stockholders
of an insolvent trust company to enforce stockholders' indi-
vidual liability under §4947 Burns 1914, Acts 1893 p. 344, the
issue as to whether the assets of the trust company had been
exhausted was properly presented by the answer in general
denial instead of by a plea in abatement. p. 682.

3. BANKS AND BANKING.—*Insolvency.*—*Liability of Stockhold-
ers.*—*Enforcement.*—*Procedure.*—*Statutes.*— As §4947 Burns
1914, Acts 1893 p. 344, concerning the individual liability of
stockholders for the debts of insolvent loan and trust com-
panies, makes no provision for the enforcement of the liability
against stockholders provided for therein, the courts must rec-
ognize such procedure as will be appropriate for the accom-
plishment of the purpose of the statute. p. 682.

4. BANKS AND BANKING.—*Insolvency.*—*Liability of Stockhold-
ers.*—*Statute.*—*Construction.*—Under §4947 Burns 1914, Acts
1893 p. 344, providing that the stockholders of a trust com-
pany "shall be individually liable, in addition to their capital
stock, in a sum equal to the amount of the same for the pay-
ment of any sum which shall at any time remain unpaid, for
the satisfaction of any debt or liability which may at any time
remain unpaid after the capital stock of such corporation and
all its assets may be or shall have been exhausted," the stock-
holders collectively are individually liable, in proportion to the
number of shares of stock owned by each, for such sum, not
exceeding the amount of the capital stock, as may be required
for the satisfaction of the debts and liabilities which may re-
main unpaid after the capital stock and all assets have been
exhausted; the word "any" preceding "debt or liability" being
used in the sense of "every" or "all." p. 682.

# 680    APPELLATE COURT OF INDIANA,

5. BANKS AND BANKING.— *Insolvency.— Individual Liability of Stockholders.—Enforcement.—Nature of Fund Collected.—Statutes.*—The whole amount collected from the stockholders of an insolvent trust company under §4947 Burns 1914, Acts 1893 p. 344, making stockholders of a trust company individually liable for its debts after its assets have been exhausted, is in the nature of a trust fund for the benefit of all the corporate creditors. p. 682.

6. JURY.—*Insolvency of Trust Company.—Enforcement of Stockholder's Individual Liability.—Right of Jury Trial.*—In an action by the creditors of an insolvent trust company to enforce stockholders' individual liability under §4947 Burns 1914, Acts 1893 p. 344, in which an accounting was involved, the refusal of stockholders' demand for a jury trial *held* not error, the action calling for the exercise of the equitable powers of the court because of the complicated accounts and interests involved. (*Boonville Nat. Bank* v. *Blakey* [1906], 166 Ind. 427, distinguished.) p. 684.

7. BANKS AND BANKING.—*Insolvency.—Enforcement of Stockholder's Liability.—Inferences from Facts Proved.—Execution of Note to Secure Creditors.—Statutes.*—In an action by creditors against stockholders of an insolvent trust company to enforce stockholders' individual liability under §4947 Burns 1914, Acts 1893 p. 344, in which the stockholders contended that a note given by the directors of the company to such creditors, who had loaned the company an amount sufficient to pay its depositors, constituted a bar to the action, where the agreement under which the note was executed was not in writing, and had to be determined from parol evidence, the trial court had a right to consider, not only the facts proved, but also any reasonable inference which might be drawn therefrom. p. 688.

8. APPEAL.—*Review.—Evidence.—Sufficiency.—Findings of Trial Court.—Conclusiveness.*—In determining the sufficiency of the evidence, the court on appeal is only required to consider whether the facts proved, together with any reasonable inferences of which they are susceptible, will sustain the decision of the trial court, and, if so, will accept the conclusion reached by such court, although contrary inferences equally as reasonable may be drawn from the evidence. p. 688.

9. BANKS AND BANKING.—*Insolvency.—Enforcement of Liability of Stockholders.—Defenses.—Note from Directors of Insolvent Trust Company to Creditors.—Evidence.*—In an action by creditors against stockholders of an insolvent trust company to enforce the stockholders' individual liability under §4947 Burns 1914, Acts 1893 p. 344, in which the stockholders

defended on the ground that a note executed by the directors of the trust company to creditors who had loaned the trust company a sum sufficient to pay its depositors constituted a bar to the action to enforce the individual liability, evidence *held* sufficient to warrant the conclusion that the note was executed merely to secure the creditors against loss in making such loans, requiring them to avail themselves of their remedy under the statute against the stockholders before it could be ascertained whether they had sustained a loss. p. 690.

From Lake Superior Court; *James P. Wason*, Special Judge.

Action by the First National Bank of Hammond and others against Theodore C. Klotz and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*McMahon & Conroy*, for appellants.

*William J. Whinery* and *Jesse E. Wilson*, for appellees.

BATMAN, P. J.—This is an action by appellees, designated as banks and trust companies, six in number, against appellants, and the appellees who are individuals, to recover an alleged liability under §4947 Burns 1914, Acts 1893 p. 344, by reason of being stockholders in the East Side Trust and Savings Bank of Hammond, Indiana, an insolvent trust company, hereinafter designated as the East Side Bank. The complaint is in a single paragraph to which a plea in abatement was filed, based on the ground that all of the assets of said East Side Bank had not been exhausted. A demurrer to this plea having been sustained, an answer in three paragraphs was filed. The first is a general denial. The second alleges facts to show that all of the assets of said East Side Bank have not been exhausted. The third is based on an alleged waiver on the part of said banks and trust companies to assert a statutory liability against the stockholders of said East Side Bank. A

reply in general denial was filed to said affirmative paragraphs of answer. Appellants demanded a trial by a jury, which was denied, and thereafter the court, having heard the evidence, rendered judgment in favor of said banks and trust companies, appellees herein. After a motion for a new trial was overruled, this appeal followed, based on an assignment of errors presenting the questions hereinafter determined.

Appellants contend that the court erred in sustaining a demurrer to their plea in abatement, but we are not of that opinion. By the provisions of said

1, 2. §4947 Burns 1914, *supra*, no right of action existed in favor of said banks and trust companies, as creditors, against appellants as stockholders, unless all the assets of said East Side Bank had been exhausted. It was therefore incumbent upon the former to allege and prove such fact in order to recover in this action. The issue as to such fact was properly presented by the answer in general denial instead of a plea in abatement.

Appellants further contend that the court erred in refusing their demand for a jury trial. If the cause is one of equitable jurisdiction, there was no error

3-5. in the court's action in that regard, even if it be conceded that such demand was properly and timely made. It will be observed that this is not a common-law action, but one based on the following section of our statute with reference to loan and trust companies: "The stockholders in such corporation shall be individually liable, in addition to their capital stock, in a sum equal to the amount of the same for the payment of any sum which shall at any time remain unpaid, for the satisfaction of any debt or liability which may at any time remain unpaid after the capital stock of such corporation and all its assets may be or shall have been exhausted." §4947 Burns 1914, *supra*. We fail to find

any precedent in this state to guide us in determining whether an action prosecuted thereunder, by all the creditors of a loan and trust company against all the stockholders thereof, is an action at law or one in equity. Therefore we must look to general principles, and to the decisions in other jurisdictions, where such principles have been applied under similar statutes for a like purpose for our guidance. An examination of the statute in question discloses that no provision is made for the enforcement of the liability against stockholders provided in said section, and hence courts must recognize such procedure as will be appropriate for the accomplishment of its purpose. Directing our attention to the language used in the section of the statute under consideration, and keeping in mind the evident purpose to be accomplished thereby, it is clear to us that the stockholders collectively are thereby made individually liable, in proportion to the number of shares of stock owned by each, for such a sum, not exceeding the amount of the capital stock, as may be required for the satisfaction of the debts and liabilities which may remain unpaid, after the capital stock thereof, and all of its assets have been exhausted. A different construction has been urged, based on the use of the word "any," in the section of the statute under consideration, in connection with the words "debt or liability." The use of that word in such connection does not require that said section be given a meaning different from what we have indicated, as it is a well-recognized fact that the word "any" is often used in the sense of "every" or "all," and will be given that meaning when the fair import of the context requires it. 1 Bouvier's Law Dictionary p. 205; 2 Am. & Eng. Ency. Law (2d ed.) 414; 3 C. J. 232; *Ludwig* v. *Cory* (1902), 158 Ind. 582, 64 N. E. 14; *Indiana, etc., Coal Co.* v. *Neal* (1906), 166 Ind. 458, 77 N. E. 850, 9 Ann. Cas. 424; *White* v. *Furgeuson*

(1902), 29 Ind. App. 144, 64 N. E. 49; *People* v. *Van Cleave*, 187 Ill. 125, 58 N. E. 422. Giving said section the construction we have indicated, it is clear that the whole amount collected from the stockholders thereunder, will be in the nature of a trust fund for the benefit of all of the corporate creditors.

Since the action is by all the creditors of said East Side Bank against all the stockholders thereof, except those who have already paid the full amount of

6.   their secondary liability under said section, for the collection of only such portion of their liability thereunder, as shall not "exceed the respective claims of the plaintiffs in this cause," an accounting is evidently involved, not only for the purpose of determining the amount due each of the appellees, banks and trust companies, but the amount due from each individual stockholder by reason of his *pro rata* liability. We thus have a situation which calls for the equity powers of the court, because of the complicated accounts and interests involved, and to avoid a multiplicity of suits, which would result in probable confusion and possible injustice in their ultimate results. As said by the Supreme Court in the case of *Horn* v. *Lupton* (1914), 182 Ind. 355, 105 N. E. 237, 106 N. E. 708: "Law courts are not possessed of the special statutory machinery required for dealing with complicated accounts and interest." It thus appears that the banks and trust companies, who instituted this action, were without an adequate legal remedy, in the enforcement of the liability of appellants under the section of the statute in question, and hence were clearly within their rights in seeking relief in a court of equity. We are fully sustained in the conclusion we have reached by the following decisions: *Terry* v. *Little* (1879), 101 U. S. 216, 25 L. Ed. 864; *Pollard* v. *Bailey* (1874), 20 Wall. 520, 22 L. Ed. 376; *Cook* v. *Carpenter* (1905), 212 Pa. 165, 61 Atl.

799, 1 L. R. A. (N. S.) 1900, 108 Am. St. 854, 4 Ann. Cas. 723; *Zang* v. *Wyant* (1898), 25 Colo. 551, 56 Pac. 565, 71 Am. St. 145; *Adams* v. *Clark* (1906), 36 Colo. 65, 85 Pac. 642, 10 Ann. Cas. 770; *Eads* v. *Orcutt* (1899), 79 Mo. App. 511; *Toll* v. *Cobbey* (1912), 22 Colo. App. 244, 124 Pac. 357.

Appellants have cited the case of *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 76 N. E. 529, in support of their contention that this is an action at law, but we do not find it to be in conflict with the conclusion we have reached. That was an action by a trustee in bankruptcy against a number of defendants to recover the amount of a payment received by each from the bankrupt as a preference. That action, unlike the instant case, did not involve a matter in which there was a community of interests, and it is expressly stated that the necessity for an accounting did not appear. By the facts alleged, if there was a liability against any one of the defendants, it was for the full amount of the preference received, regardless of a similar liability against any other defendant. These facts so far differentiate that case from the one before us as to render it without any controlling influence on the question we have been considering. Certain cases have been cited which appear to hold that where the whole amount of liability of stockholders is sought to be recovered the proceeding must be at law, but where less is required the proceeding may be in equity. However, if this be taken as a controlling factor, still this action may be considered as one in equity, since the amount sought to be recovered is expressly limited to such a sum as shall not "exceed the respective claims of the plaintiffs in this cause." It will also be observed that in the case of *Hale* v. *Allinson* (1900), (C. C.) 102 Fed. 790, cited by appellants, the liability of each stockholder had been previously adjudicated to be the full amount provided by statute, and

hence no question in which the defendants had a common interest remained. Such fact appears to have been given weight in that case, but no such fact is present in the instant case. We conclude, that as this is an equitable action, the court did not err in refusing appellants' demand for a jury.

Appellants finally contend that the decision of the court is not sustained by sufficient evidence, and is contrary to law. The undisputed evidence establishes the following facts: In 1914 the six banks and trust companies, named as appellees herein, and said East Side Bank, were separately engaged in the banking business in the city of Hammond, Indiana. There was also existing in said city during said year an association, composed of said six banks and trust companies, known as the Hammond Clearing House Association. In the latter part of said year, the Auditor of State caused an examination to be made of said East Side Bank, and found it to be insolvent. This fact having become known to said association, a meeting of its members was called, at which it was decided to tender its aid in liquidating said bank, if satisfactory arrangements could be made. To that end, said association appointed W. C. Belman, Harry M. Johnson and Frank Hammond, each of whom was an officer in a bank or trust company composing its membership, to represent it in formulating and executing a plan for such purpose. A special meeting of the stockholders of said East Side Bank was held on December 3, 1914, which was attended by the representatives of more than eighty per cent. of the outstanding shares of its capital stock. At this meeting it was decided that said bank should be liquidated, and a written request therefor addressed to the auditor of state, was signed by said stockholders, and afterwards forwarded to said officer, who approved the same. The committee of said clearing house association also at-

tended this meeting of stockholders, and it was there agreed that the banks and trust companies would furnish said East Side Bank sufficient money with which to pay all of its creditors if they were made secure against any loss in so doing, and that in order to make them secure, that Englehard Ullrich and John C. Becker, two of the directors of said East Side Bank, the former being the president thereof, should execute their note for the sum of $25,000 and furnish satisfactory security therefor. On the following day a special meeting of the board of directors of said East Side Bank, consisting of five members, was held, at which three of its members resigned, and the three members of said committee were elected to fill the vacancies thus made. The two remaining members of said board of directors, viz., said Ullrich and Becker, in pursuance of said agreement, executed to said Belman, Johnson and Hammond their promissory note for $25,000, and secured the same by delivering to the payees thereof certain stocks, bonds, notes and mortgages as collateral. After the reorganization of the board of directors of said East Side Bank, as stated, it adopted a resolution by which it directed its president and cashier to secure loans from appellees, banks and trust companies, aggregating $64,000, for the purpose of securing money with which to pay its creditors, and further directed that they execute the notes of said bank to evidence the same, and pledge all of its assets as security therefor. Such loans were afterwards obtained in accordance with such directions, and the unpaid balances thereof form the basis of this action. The said East Side Bank was kept open for a few weeks thereafter, for the purpose of making collections and paying its creditors, but no further deposits were received. The proceeds of said loans from appellees were used in paying the creditors of said bank. The money realized from the assets of said bank, less

expenses incurred, was applied in payment of said loans, and the judgments subsequently rendered thereon. Prior to the commencement of this action, all of the assets of said bank, existing at the time of said agreement with its stockholders, made at their meeting on December 3, 1914, had been reduced to cash and applied as stated, but no effort had been made to collect said $25,000 note, and the same is still in the hands of the persons to whom it was executed.

An examination of the record fails to disclose that any written agreement was entered into with reference to the place said $25,000 note was to take in making said banks and trust companies secure, that is, as to whether it should be available for that purpose after the notes, bonds, etc., of said East Side Bank had been exhausted, or not until all their rights as creditors thereof had been asserted, which would include a recourse to the secondary liability against the stockholders under §4947 Burns 1914, *supra*. The trial court was therefore required to determine that fact from the parol evidence submitted. In making such determination that court had a right to consider, not only the facts proved, but also any reasonable inference which might be drawn therefrom. *Bronnenberg* v. *Indiana, etc., Traction Co.* (1915), 59 Ind. App. 495, 109 N. E. 784; *Schoenfeld-Yatter Co.* v. *Cline* (1917), 64 Ind. App. 285, 115 N. E. 787; *Armstrong* v. *Oster* (1919), 189 Ind. 1, 123 N. E. 109. On appeal, therefore, we are only required to consider whether or not the facts proved, together with any reasonable inference of which they are susceptible, will sustain the decision of the trial court, and, if so, we must accept the conclusion reached by that court, although contrary inferences equally as reasonable may be drawn therefrom. *Bilskie* v. *Bilskie* (1919), 69 Ind. App. 595, 122 N. E. 436; *City of Linton* v. *Jones* (1921), 75 Ind. App. 320,

130 N. E. 541. Directing our attention to the evidence with reference to the circumstances under which the said $25,000 note should become available to appellees, banks and trust companies, in making them secure against loss by reason of having furnished said East Side Bank the sum of $64,000 with which to pay its creditors. We find the following statements, in substance, in the testimony of certain witnesses: The banks and trust companies agreed to furnish the money to pay the depositors of the East Side Bank, provided that the directors thereof furnished "sufficient collateral security or sufficient guarantee that they would not lose any money in the liquidation process." It was agreed that Mr. Ullrich and Mr. Becker, and possibly Mr. Keldenrich, would furnish a note with sufficient collateral to cover $25,000, which was to be put up as additional security for the liquidation of the East Side Bank. At a meeting of the directors of the East Side Bank on December 4, 1914, "we (Belman, Johnson and Hammond) called upon Mr. Ullrich and Mr. Becker to furnish us a note for $25,000 with collateral to protect the Hammond Clearing House Association banks against any loss of putting up the required $64,000 in cash to protect the depositors." The guarantee took the form of a note for $25,000, executed by Ullrich and Becker to Belman, Johnson and Hammond. It was for the security of the banks and trust companies furnishing the money and nothing else and "had nothing to do with the assets of the East Side Trust and Savings Bank." The $25,000 note was "to secure the banks against any possible loss." It was executed to meet any deficiency in this $64,000 loan. "We (Belman, Johnson and Hammond) considered the stockholders' liability as an asset of the institution in making our estimate, and at the time we went over the list of the stockholders and checked those we

thought were good, and those we thought were not good." We "considered the possibility of collecting the stockholders' liability as an indirect asset at least. * * * We took a list of the stockholders, and Mr. Becker and Mr. Ullrich pointed out what they thought was collectible." We considered "what the possible outcome of the whole transaction would be," and notwithstanding that, we "asked Mr. Becker and Mr. Ullrich for additional guaranty." In canvassing the list of stockholders, as to their responsibility regarding their statutory liability, "we went over each name individually, and discussed whether or not they were collectible and determined from our check that there was possibly not over twelve or thirteen thousand dollars, as I remember it now, that would be collectible on a judgment from the stockholders for their additional liability; that was all taken into consideration when we asked Mr. Ullrich and his friends for this additional security." We did not consider the $25,000 note on the same level as the statutory liability of the stockholders; "we considered that the statutory liability was first."

We are clearly of the opinion that the evidence cited, when taken in connection with the reasonable inferences to be drawn from the facts which it tends to establish, is sufficient to warrant a conclusion that the agreement, under which the note in question was executed, was in effect, that the banks and trust companies, composing the Hammond Clearing House Association, should become creditors of said East Side Bank, by loaning it a sufficient sum to pay its depositors, and that said note should be held to secure them against loss in so doing. If this can be said to have been the agreement, then manifestly the said banks and trust companies will not have sustained a loss until they have exhausted all resources available to them as such cred-

itors, which would include the secondary liability of the stockholders under said §4947 Burns 1914, *supra*. Under these circumstances we cannot say that the existence of said $25,000 note is a bar to a right of recovery by the appellees, banks and trust companies, in this action, as appellants contend. Nor do we find any evidence on which we may base a conclusion, on appeal, that said appellees have waived their right to enforce the statutory liability against appellants, as stockholders. We conclude that no reversible error is shown in overruling appellants' motion for a new trial.

Judgment affirmed.