[Civ. No. 2216. Fourth Appellate District.—March 15, 1938.]

LUTHER P. LOFTIS et al., Petitioners, v. THE SUPERIOR COURT OF KINGS COUNTY et al., Respondents.

348

U. S. Webb, Attorney-General, Lucas E. Kilkenny, Deputy Attorney-General, and Roger R. Walch, District Attorney, for Petitioners.

J. L. Royle for Respondents.

MARKS, J.—An alternative writ of prohibition was issued by the Supreme Court and made returnable here. Petitioners

seek to cause respondents to refrain and desist from enforcing a restraining order prohibiting petitioners from slaughtering or doing any act leading to the slaughtering of certain tuberculous cattle in Kings County.

Manuel S. Brown, and sixteen other owners of cattle, brought an action in the Superior Court of Kings County to restrain defendants in that action, petitioners here, from proceeding with the slaughter of their cattle to which had been administered the tuberculin test and which had been proven to be reactors. The defendants in that action demurred because of lack of jurisdiction of the superior court. The demurrer was sustained without leave to amend. However, that court did make the following order:

"IT IS FURTHER ORDERED that each and all of the defendants, their agents, servants and employees, and all persons acting under them, be and they are hereby restrained from in any manner slaughtering or doing any act leading up to the slaughter or disposition of any of the cattle belonging to any of these plaintiffs, being the subject-matter of this action, pending the appeal herein."

This is the order placed in issue here.

Luther P. Loftis is sheriff; Roger R. Walch is district attorney, and William C. Truckell is live stock inspector of Kings County. A. A. Brock is director of the department of agriculture and C. U. Duckworth is head of the department of animal industry of the state of California. We will refer to them, in the order named, as the sheriff, the district attorney, the inspector, the director, and the head of the department.

In 1933 the legislature adopted an Agricultural Code for this state. (Stats. 1933, p. 60. Amended, affecting question here, Stats. 1935, p. 1611; Stats. 1937, pp. 1991, 2209.) Article three of this code contains provisions for the control of bovine tuberculosis in California. Two principal methods of control are provided for. One is the establishment of tuberculosis control areas under the general direction of the state department of agriculture. The other is the establishment of voluntary tuberculosis control areas by boards of supervisors of counties. (Sec. 234.25, Agricultural Code.) This section provides that a voluntary tuberculosis control area shall cease to exist when its territory is taken over as a tuberculosis control area by the state.

In November, 1934, the board of supervisors of Kings County passed its ordinance number 158 organizing all of that county into a voluntary tuberculosis control area. The officials of the county began enforcing the provisions of the ordinance which followed closely those of the Agricultural Code governing tuberculosis control areas except that no payment would be made by the county for the reactors slaughtered. Shortly thereafter a group of dairymen commenced legal proceedings contesting the enforcement of the ordinance. Its provisions were upheld by this court. (*Coelho* v. *Truckell*, 9 Cal. App. (2d) 47 [48 Pac. (2d) 697].) This decision has been modified in one particular, not important here, in *Stanislaus County Dairymen's Protective Assn.* v. *County of Stanislaus*, 8 Cal. (2d) 378 [65 Pac. (2d) 1305].

On February 14, 1936, an action in equity was filed in the United States District Court for the Southern District of California seeking to enjoin the officials of Kings County and the director from proceeding under the ordinance because of its alleged unconstitutionality under the due process and equal protection of the law clauses of the federal Constitution. As an additional ground for invoking the jurisdiction of the federal courts it was alleged that the complainants were citizens of the republic of Portugal, resident in Kings County. The United States District Court in this case, *Borges et al.* v. *Loftis et al.*, denied the injunction and upheld the constitutionality of the ordinance. This decision was sustained by the United States Circuit Court of Appeals for the Ninth Circuit on January 18, 1937. The United States Supreme Court declined to review the judgment on April 26, 1937. (301 U. S. 687 [57 Sup. Ct. 789, 81 L. Ed. 1344].)

Thereafter, in 1937, a group of dairymen of Kings County (a number, if not all of them, had been complainants in the Borges case) instituted another action in the United States District Court for the Southern District of California (*Avila et al.* v. *Walch et al.*) again attacking the constitutionality of the Kings County ordinance and seeking to enjoin all of the petitioners here from enforcing its provisions. The decree in equity in that case contained the following:

"NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the defendant county officers are en-

titled to slaughter all such dairy cattle belonging to any of the complainants as have reacted positively to the tuberculin test prior to the commencement of this suit, and none other, provided that thereafter the complainants shall be entitled to conduct a post mortem of such destroyed cattle.

"IT IS FURTHER ORDERED, ADJUDGED AND DE-CREED that the defendant county officials have no authority to test or brand or slaughter any other cattle belonging to any of the complainants."

The United States District Court denied application for injunction and dismissed the bill in equity. In January, 1938, the United States Circuit Court of Appeals for the Ninth Circuit denied complainants the right of appeal from that judgment.

By an order effective on August 2, 1937, the director placed all of the counties of the state in tuberculosis control areas under state authority. This order automatically terminated the voluntary tuberculosis control area created under the Kings County ordinance. (Sec. 234.25, Agricultural Code.) The effect of the situation created by this order was before the United States District Court in the Avila case and was considered there in the findings of fact. It was necessarily involved in and decided by the decree in equity.

On January 18, 1938, Manuel S. Brown and his cocomplainants brought the action in the Superior Court of Kings County to restrain these petitioners from slaughtering the cattle that had been tested and found to be reactors under the county ordinance prior to August 2, 1937. The defendants in that action (petitioners here) raised by demurrer the question of the jurisdiction of the Superior Court of Kings County. The demurrer was sustained without leave to amend and the superior court made the order under attack here which we have already quoted.

It should be observed that some, if not all, of the plaintiffs in this last Kings County Superior Court action were complainants in the case of *Borges et al.* v. *Loftis et al.*, and all of them, with others, were complainants in the case of *Avila et al.* v. *Walch et al.* The defendants in the Borges case were the director and three Kings County officials. They are four of the five defendants in the last Kings County Superior Court action, and petitioners here. The defendants in the Avila case were the identical defendants in the last

Kings County Superior Court case and are the petitioners here.

The serious question presented here is our right to review the order of the Superior Court of Kings County restraining petitioners from proceeding with the slaughter of the tuberculous cattle which had been proven reactors prior to August 2, 1937, pending an appeal from the judgment of that court entered after sustaining the demurrer to the complaint without leave to amend.

It is a general rule that a judgment of a superior court will not be reviewed in proceedings for a writ of prohibition where the right of appeal from the judgment exists, as usually the right of appeal is held to afford an aggrieved party a plain, speedy and adequate remedy, making resort to prohibition unnecessary and improper. It has also been held that, pending appeal from its judgment, the superior court may by order hold the parties *in status quo*. (*Tulare Irr. Dist.* v. *Superior Court,* 197 Cal. 649 [242 Pac 725].)

If we understand the position of respondents correctly it may be summarized as follows: That the Constitution gives the superior court general jurisdiction in equity cases, which includes jurisdiction to grant or deny injunctive relief; that this general grant of equity jurisdiction includes the power to decide all questions in equity presented to it and to decide those questions rightly as well as wrongly; that a constitutional grant of jurisdiction cannot be limited by statute; that the provisions of paragraph four of the second division of section 526 of the Code of Civil Procedure providing that "an injunction cannot be granted: . . . 4. To prevent the execution of a public statute by officers of the law for the public benefit" (see, also, sec. 3423, Civ. Code) is a limitation on the exercise of jurisdiction and cannot be a limitation of jurisdiction itself which is conferred by the Constitution.

This argument is not a new one. In solving this problem we are required to follow the law established by the numerous cases that have already settled it in this state. In *Reclamation Dist.* v. *Superior Court,* 171 Cal. 672 [154 Pac. 845], the Supreme Court said:

"The act being constitutional and the injunction sought being one which contravenes the prohibition of section 3423 of the Civil Code, there still remains the question whether the superior court, in entertaining the application for such in-

junction, is exceeding its jurisdiction and thus laying the foundation for a writ of prohibition. Such writ will not go to restrain mere errors by the court below. It is only an excess of jurisdiction which may be reached in this manner. This court has held, in *Wright* v. *Superior Court*, 139 Cal. 469 [73 Pac. 145], that a writ of prohibition would issue to arrest the action of a superior court which was undertaking to enjoin an action pending in another court in violation of the first subdivision of section 3423 of the Civil Code. In *Glide* v. *Superior Court*, 147 Cal. 21 [81 Pac. 225], a similar writ was based on the seventh subdivision of section 3423, whch provides that an injunction cannot be granted 'to prevent a legislative act by a municipal corporation'.

"Section 3423 of the Civil Code does not, in all of its provisions, establish new rules for the granting or denying of preventive relief in equity. Some of the subdivisions are merely declaratory of principles which, in the absence of statute, were and are generally held to govern courts of chancery in determining what causes are proper subjects of equitable cognizance. Subdivision 1 is more than declaratory. It establishes a rule; it limits the right to issue injunctions as that right was understood in the English and American courts before the adoption of our codes. The Constitution of this state gives to the superior courts original jurisdiction 'in all cases in equity'. To the argument that this jurisdiction could not be limited by statute, this court said in *Spreckels* v. *Hawaiian etc. Co.*, 117 Cal. 377 [49 Pac. 353], and in *Wright* v. *Superior Court*, 139 Cal. 469 [73 Pac. 145], that subdivision 1 of section 3423 was an exercise of the legislative power to define the rights of persons. It did not limit the power of courts of equity to issue an injunction wherever the complainant was entitled thereto, but so operated on the complainant as to take away his right in certain cases to this form of relief. In the Wright case where, as we have said, a writ of prohibition was issued, the court held that the superior court was without jurisdiction to issue an injunction in a case in which such relief is forbidden by subdivision 1 of section 3423. The dissenting opinion of Shaw, J., took the ground that if, as the court held, the subdivision merely regulates the rights of persons, the issuance of a writ of injunction contrary to the statutory declaration is an erroneous determination that a cause of action exists

rather than an excess of jurisdiction. Whatever force this criticism may have, it is not applicable to the provision of subdivision 4 of section 3423. For here, in the subdivision declaring that injunction does not lie to restrain the execution of a legislative act by public officials, we have the enunciation of an old and generally recognized rule of equity jurisdiction.

"This rule, like that of subdivision 7, which was involved in *Glide* v. *Superior Court*, 147 Cal. 21 [81 Pac. 225], has its underlying basis in the division of the activities of government into three separate and independent departments, each of which is, in the exercise of its own peculiar functions, free from the control of either of the others. (5 Pomeroy's Equity Jurisprudence, sec. 327.) The power to enjoin officers from enforcing a statute, even where the statute was claimed to be unconstitutional, has been denied in some cases. (*Kneedler* v. *Lane*, 45 Pa. St. 238; *Thompson* v. *Commissioners of Canal Fund*, 2 Abb. Pr. [N. Y.] 248.) This court has not carried the doctrine so far. The prohibition against enjoining the execution of statutes has been held to apply only to valid statutes. (*Wheeler* v. *Herbert*, 152 Cal. 224 [92 Pac. 353].) But, at least as so limited, the rule is generally recognized. In *Southern Oregon Co.* v. *Quine*, 70 Or. 63 [139 Pac. 332], the court said: 'We think the law is fixed, beyond cavil, that courts of equity have no power by injunction to restrain a public officer from performing an official act that he is required by valid law to perform. It is not sufficient to clothe the court with jurisdiction to say simply that, unless the court extends its restraining hand, hardships will follow, or irreparable damage will ensue, because the officer delegated to execute such law may act unwisely or injuriously to the party seeking relief. The acts must be such as are without the sanction of a sound law.' (See, also, *Southern Min. Co.* v. *Lowe*, 105 Ga. 352 [31 S. E. 191]; *Mendenhall* v. *Denham*, 35 Fla. 250 [17 So. 561]; *Inhabitants of Greenville* v. *Seymour*, 22 N. J. Eq. 458.)

"Even though the lower tribunal is about to exceed its jurisdiction, the writ of prohibition will not lie where there is 'a plain, speedy and adequate remedy in the ordinary course of law'. (Code Civ. Proc., sec. 1103.) It is true that in the case at bar the petitioner might by appeal review the correctness of any judgment or order enjoining it, but

we do not think that such appeal would, under the circumstances here described, be an adequate remedy. (*Glide* v. *Superior Court*, 147 Cal. 21 [81 Pac. 225].)'' (See, also, *Davis* v. *Superior Court*, 184 Cal. 691 [195 Pac. 390]; *A. G. Col Co.* v. *Superior Court*, 196 Cal. 604 [238 Pac. 926]; *Moore* v. *Superior Court*, 6 Cal. (2d) 421 [57 Pac. (2d) 1314]; *Daugherty* v. *Superior Court*, 23 Cal. App. (2d) 739 [74 Pac. (2d) 549].)

It is also well settled that before a writ of prohibition will issue to prevent the enforcement of an injunction against an official, the official act enjoined must have been required of the officer by a valid, existing and constitutional statute. (*Reclamation Dist.* v. *Superior Court, supra*; *Abe* v. *Fish & Game Com.*, 9 Cal. App. (2d) 300 [49 Pac. (2d) 608].)

This presents the question of the effect of the termination of the Kings County voluntary tuberculosis control area on August 2, 1937, by the order of the director. As we find that duties are, or were, imposed by law upon petitioners by different enactments we cannot consider their positions collectively.

As a preliminary step in the solution of this question we must weigh one argument of petitioners. They urge that as section 234.25 of the Agricultural Code gives to the board of supervisors of a county the right and power to create a voluntary tuberculosis control area where its territory is not included in a state tuberculosis control area, the duties imposed on the county officials to enforce the provisions of the county ordinance are in fact duties imposed on these officers by section 234.25 of the Agricultural Code and are, therefore, continuing duties imposed by law to which the prohibition by injunction will not lie.

We cannot agree with this argument. The power of county officials to create a voluntary tuberculosis control area is drawn from section 11, article XI, of the Constitution and section 234.25 of the Agricultural Code. These are merely enabling acts and are not self-executing. They place no obligation on a board of supervisors to form a voluntary tuberculosis control area. The formation of such an area, as the name implies, is a voluntary act of that body. Until a board of supervisors acts no such area is formed. A voluntary tuberculosis control area is an entity .entirely separate and

apart from a state tuberculosis control area. (*Coelho* v. *Truckell, supra.*) During the life of the voluntary tuberculosis control area it draws its vitality from, and county officers find their duties defined in, the ordinance and not in the state law.

The case of *O'Neal* v. *Seabury,* 24 Cal. App. (2d) 308 [74 Pac. (2d) 1082], is precisely in point and is decisive of this question. It was there said:

"Pursuant to the provisions of section 234.25 of the code, the county of Madera thereupon established a tuberculosis control district including the entire territory of that county, and enacted ordinance number 164, which is involved in this appeal.

"While the ordinance was in force this suit for injunction was brought against the defendants. Before the appeal in this case was submitted to this court for determination, pursuant to the authority conferred upon the agricultural department of the State of California by division II of the Agricultural Code, that department of the State, on July 3, 1937, formally included the county of Madera within the general 'tuberculosis control area' of the State and thereby made it a part of the state district bringing the county of Madera under the exclusive control of the agricultural department of the state with respect to the inspection, segregation and testing of beef and dairy cattle to eradicate tuberculosis therefrom. This act including Madera county in the state tubercular control area had the effect of abrogating the tubercular ordinance of that county, number 164, which was involved on this appeal. . . . As the state tuberculosis control district now exists under the law, the defendants are powerless to enforce the Madera ordinance and an injunction becomes useless." It follows that all duties imposed, and powers given, by the Kings County ordinance ended on August 2, 1937.

 Petitioner William C. Truckell is live stock inspector of the county of Kings. He is not a state officer. The Agricultural Code imposes no duties upon him pertaining to the tubercular testing and slaughtering of bovines. He has no duties to perform in this connection under the provisions of the Agricultural Code or any other state law to which we have been cited. He can have no duties now imposed upon him by the Kings County ordinance as that ordinance became

ineffective on August 2, 1937. It follows that since the restraining order of the respondents in question here did not restrain Truckell from performing a duty imposed upon him by any existing law, the superior court did not exceed its jurisdiction in restraining him from slaughtering cattle pending the appeal from the judgment of that court.

Petitioners Brock and Duckworth are state officers. As soon as the county of Kings became a state tuberculosis control area the primary duty of enforcing the provisions of the Agricultural Code relating to bovine tuberculosis in that county were placed on them. These duties are many and are made explicit by the statutes. That these provisions of law are for the benefit of the public cannot be doubted. It follows that it was an excess of jurisdiction on the part of respondents to restrain these officers from performing those duties enjoined upon them by an existing, effective and valid state law. (*Patrick* v. *Riley,* 209 Cal. 350 [287 Pac. 455].)

Petitioner Walch is district attorney of Kings County. Chapter three of the Agricultural Code makes many acts of cattle owners crimes if any of them fail to conform to its requirements. Section seven of the Agricultural Code places the special duty upon a district attorney of prosecuting these crimes. These crimes include resistance of state officers slaughtering reactor cattle. He also has the general statutory duty of prosecuting crimes committed within his county. It follows that the order in question prohibits the district attorney from performing duties enjoined upon him by state law and cannot be upheld.

The petitioner Luther P. Loftis is sheriff of Kings County. As a peace officer he has many duties in connection with keeping the peace and prosecution of crime, which duties are expressly placed upon him by law. These duties are too numerous and well known to need particularizing. The restraining order might well prohibit him from performing these duties should the director and head of the department proceed to perform their duties in Kings County under the state law. As to Loftis, the order in question may well prohibit him from performing these duties enjoined upon him by law and, therefore, is in excess of the jurisdiction of the superior court.

Petitioners urge that all of the issues raised in the Kings County case in which the order in question was issued

have been litigated in the federal courts and especially in the case of *Avila et al.* v. *Walch et al.;* that as those questions have been decided adversely to the cattle owners in the federal courts which have jurisdiction of the parties and the subject-matter of the action, they cannot be again litigated in the state courts. Were this an appeal after judgment rendered following trial where the defense of *res adjudicata* had been presented, this argument would have much weight. Such is not the case. This issue was not presented in any of the pleadings in the respondent court. It cannot serve here as a reason for issuing a writ of prohibition where we are only concerned with the question of jurisdiction to make the challenged order. Jurisdiction of respondents to make the order is not affected by the fact that *res adjudicata* might have been available as a defense to the action in Kings County at the trial if the issue were properly presented to the trial court.

 Our attention is especially called to section 230 of the Agricultural Code, which provides as follows:

"It is unlawful to apply a tuberculin test to any bovine animal which has at any time been found by an approved veterinarian to be a reactor."

It is suggested that prior to August 2, 1937, several hundred cattle were tested under the county ordinance and found to be reactors; that the provisions of this section prohibit these cattle from being tested again and slaughtered under the provisions of the state law; that the conclusions we have reached will prohibit these reactors from being tested again and slaughtered; that they will continue to be milked and their milk sold in the state contrary to the public policy declared by the legislature in the Agricultural Code.

We see no such dire and unfortunate results following our conclusions. As we have observed, a county voluntary tuberculosis control area is an entity separate and distinct from a state tuberculosis control area. (*Coelho* v. *Truckell, supra.*) They draw their powers from separate enactments. The officers administering these powers are not the same. Their territories cannot overlap because when the state moves in the county must move out of the field.

The section in question is found in the portion of the Agricultural Code dealing with state tuberculosis control areas. There is no such provision in the section dealing with county voluntary tuberculosis control areas. This section must be

held to apply to state tuberculosis control areas only and to prohibit the retesting of reactors that have been tested by duly authorized state representatives in a state tuberculosis control area and not to reactors found and tested in a county voluntary tuberculosis control area. Any other construction placed upon the section would lead to the unreasonable result suggested by counsel. Where reasonably possible a law should be construed to reach a result that is reasonable and which was intended by the legislators enacting it.

In some instances the tuberculin test of the reactors in Kings County may have been administered by duly authorized state representatives acting under county officials in the Kings County voluntary tuberculosis control area. If this has been done (the record here is silent on this question) there should be no good reason why the state officials should not proceed to have the reactors appraised and slaughtered as required by state law. If it has not been done and the reactors have not been tested by authorized state representatives, the state officials should proceed to retest these cattle and proceed as though there had been no former test under the county ordinance.

The petition of William C. Truckell for a writ of prohibition is denied and as to him alone the alternative writ is discharged.

The petition of Luther P. Loftis, Roger R. Walch, A. A. Brock and C. U. Duckworth for a writ of prohibition is granted and as to them the writ will issue as prayed for.

Barnard, P. J., and Jennings, J., concurred.

An application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 12, 1938.